**Jeff FRIEDLEIN, Kari Friedlein, and Gary Kregel, Plaintiffs,**

v.

**E.I. DUPONT DE NEMOURS & CO., Defendant.**

No. 98–1003–EJM.

United States District Court, N.D. Iowa, Eastern Division.

Sept. 9, 1999.

## ORDER

McMANUS, District Judge.

This matter is before the court on defendant's resisted Motion for Summary Judgment, filed December 30, 1998. Granted.

On January 9, 1998, Plaintiffs filed this action in the Iowa District Court for Clayton County seeking damages arising from their farming application of an herbicide manufactured by defendant DuPont. On February 6, 1998, defendant removed the matter to this court. Plaintiffs are citizens of Iowa, defendant DuPont is a Delaware corporation with its principal place of business in Delaware, and the amount in controversy exceeds $75,000. The court has jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs are engaged in the business of farming in and around Guttenberg, Iowa. In 1995 they applied Accent, an herbicide manufactured by defendant, to certain of their cornfields. They assert that the crop treated with Accent was stunted, producing shorter cornstalks and smaller, unfilled ears of corn as a result of the application of Accent, resulting in yields that were less than half that of adjacent fields treated with other herbicides, reducing the value of their crop by about $100,000. They bring their action in the five counts. Count 1 is premised on the theory of strict liability, with plaintiffs asserting that the herbicide was defective and unreasonably dangerous to their property. In Count 2, plaintiffs claim breach of express warranty, asserting that defendant expressly warranted that Accent was fit for its intended use of improving crop yields, and did not conform to the warranty. In Count 3, plaintiffs claim breach of implied warranty of fitness for particular purpose. In Count 4, plaintiffs claim that defendant was negligent in the formulation of the product. Finally, in Count 6[1], plaintiffs claim defendant was negligent in its testing of the product.

Defendant seeks summary judgment, asserting that plaintiffs' tort claims (Counts 1, 4 and 5) are barred by the economic loss doctrine, that plaintiffs have no evidence supporting their claims of defective or negligent manufacture or design, and that plaintiffs have destroyed the only evidence that could have supported these theories. Defendant further asserts that plaintiffs' warranty claims fail for want of privity with DuPont, that any implied warranty claims were disclaimed, and that any breach of warranty claims are limited to recovery of the purchase price of the product. Finally, defendant asserts that plaintiffs' "label based claims" are preempted by the Federal Insecticide, Fungicide and Rodenticide Act FIFRA, 7 U.S.C. § 136, et seq.

Fed.R.Civ.P. 56(c) provides that summary judgment shall be entered if the "pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give him the benefit of all reasonable inferences. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984). The opposing parties must resist the motion by setting forth specific facts showing that there is a genuine issue of material fact for trial. *Id.,* (citing Fed.R.Civ.P. 56(e) and *Burst v.*

---

1. The Petition skips from Count 4 to Count 6, and does not contain a Count 5.

*Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981)).

*Green v. St. Louis Housing Authority*, 911 F.2d 65, 68 (8th Cir.1990).

■ Beginning with DuPont's contention that the claimed diminution in crop was an economic loss not recoverable in tort, in *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995), while considering the nature of economic losses, the Iowa Supreme Court quoted with approval the following language:

> We see no reason to make the presence or absence of physical harm the determining factor; the distinguishing central feature of economic loss is not its purely physical characteristic, but its relation to what the product was supposed to accomplish. For example, if a fire alarm fails to work and a building burns down, that is 'economic loss' even though the building was physically harmed; but if the fire is caused by a short circuit in the fire alarm itself, that is not economic loss.

*Id.* at 106, quoting *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Security Serv.*, 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, 133 (1981). The *Fireman's Fund* court observed that

> "[e]conomic loss, as we view it, is the loss of the benefit of the user's bargain. It is the loss of the service the product was supposed to render, including loss consequent upon the failure of the product to meet the level of performance expected of it in the consumer's business."

*Id.*

Plaintiffs' tort claims in this action are based upon their commercial expectation that an application of Accent would control unwanted grasses in farm fields without damaging the emergent corn crop. It is the court's view that the Accent's not harming the emergent corn crop while eradicating unwanted grasses was central to what the application was to accomplish, and therefore the failure to satisfy this performance level was not a hazard peripheral to the product's function.

In light of the foregoing authorities, standards and discussion, it is the court's view that the damage claimed herein is an economic loss which may not be recovered under the tort theories of Counts 1, 4 and 6. *Tomka v. Hoechst Celanese Corp., supra*, 528 N.W.2d at 106. Accordingly, the motion shall be granted as to those counts.

■ Next, defendant asserts that plaintiffs' warranty claims are barred because plaintiffs lack privity with DuPont. In support, defendant urges that the Iowa Supreme Court has held that non-privity buyers cannot recover consequential economic losses under warranty theories.

In *Tomka v. Hoechst Celanese Corp., supra*, the Iowa Supreme Court stated that "[w]hether a party is 'in privity' with another party depends on whether they are parties to a contract." In the *Tomka* case, as here, the plaintiffs did not buy the product from the defendant manufacturer, and therefore they were not in privity with the manufacturer. *Id.*, 528 N.W.2d at 107. Citing its previous holding in *Beyond the Garden Gate, Inc. v. Northstar Freeze–Dry Mfg., Inc.*, 526 N.W.2d 305, 309–310 (Iowa 1995), the *Tomka* court noted that non-privity buyers cannot recover consequential economic loss damages under a theory of express warranty. *Tomka*, 528 N.W.2d at 107. The *Tomka* court went on to hold that a plaintiff not in privity with the defendant could not maintain an action seeking recovery for consequential economic losses based upon a theory of an implied warranty of fitness for a particular purpose. In accordance with the foregoing, it is the court's view that plaintiffs' claims in Counts 2 and 3 are governed by, and foreclosed by, the above referenced Iowa Supreme Court decisions.

Due to the court's disposition of this matter, the court need not address defendant's remaining grounds for summary judgment. While oral argument was requested, the court finds it unnecessary.

It is therefore

ORDERED

Granted.